UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BIWEN LIANG,

                        Plaintiff,

             -against-

HOME RENO CONCEPTS LLC,
HOME BEYOND CENTER LLC,
BEINA CHEN,
YAN MYERS,
TAO YANG,
DOES 1-5,

                        Defendants.
-----------------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-3503-SJB

**BULSARA, United States Magistrate Judge:**

Following an allegedly failed home renovation project against Defendants Home Reno Concepts LLC ("Home Reno"), Plaintiff Biwen Liang ("Liang") brought this action Home Beyond Center LLC ("Home Beyond"), Beina Chen ("Chen"), Yan Myers ("Myers"), Tao Yang ("Yang"), and unidentified Doe Defendants (collectively "Defendants").[1] Liang alleges Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and several state laws. Pending now before the Court is Defendants' motion on the pleadings on the RICO claim. For the reasons stated herein, the motion is granted, the RICO claim is dismissed with prejudice, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

---

[1] Liang's original complaint, (Compl., Dkt. No. 1), named three other defendants—Jinshan Jia, Pengshi Huang, and Irene Chen. Liang's First Amended Complaint removed Jinshan Jia and Pengshi Huang. (First Am. Compl., Dkt. No. 11). Liang's Third Amended Complaint removed "Irene Chen." (Third Am. Compl., Dkt. No. 46 ¶¶ 19, 23).

Liang filed her original complaint on June 9, 2017. (Compl., Dkt. No. 1). A first amended complaint was filed on August 29, 2017. (First Am. Compl., Dkt. No. 11). After Defendants filed a motion for judgment on the pleadings, (Dkt. No. 23), Liang filed two motions to amend the complaint. On March 19, 2018, the Court denied the motion for judgment on the pleadings, granted the motion for leave to file a Third Amended Complaint, and denied the motion to file a Second Amended Complaint as moot. (Order dated March 19, 2018, Dkt. No. 45). The Court ruled that "[a]ny dismissal of any claims in the Third Amended Complaint shall be with prejudice, in light the ample opportunity to amend afforded to Liang." *Id.* at 3.[2] Liang filed her Third Amended Complaint on March 23, 2018.[3] (Third Am. Compl., Dkt. No. 46). Defendants then filed the present motion for judgment on the pleadings on April 23, 2018.[4] (Mot. for J. on the Pleadings, Dkt. No. 53).

For the reasons stated below, the motion on the pleadings is granted with respect to the RICO claim, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims.

---

[2] The Defendants' filed their answer on April 23, 2018 (Answer to Third. Am. Compl., Dkt. No. 52). On May 13, 2018, Defendants filed a motion for declaratory judgment that Defendants filed their answer timely. (Mot. for Declaratory J., Dkt. No. 57 at 1). Plaintiff's counsel asserts that the answer was untimely as it was not filed within the 21 days permitted under Fed. R. Civ. P. 12(a)(1)(A)(i). (Resp. to Mot. for Declaratory J., Dkt. No. 58 at 1). The Court denied the motion for declaratory judgment. (Order dated May 21, 2018). In connection with Defendants' motion for judgment on the pleadings, the Court has considered Defendants' answer.

[3] Liang labels this complaint as the Second Amended Complaint. It is, however, the third. The Court will refer to the operative complaint as the Third Amended Complaint, consistent with the Court's previous orders.

[4] Defendants incorrectly titled their motion as one to dismiss, but it is a motion on the pleadings, since it was filed with an answer.

<u>Factual Background</u>

On a motion on the pleadings, the Court may consider the facts drawn from the "'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *Firestone v. Berrios*, 42 F. Supp. 3d 403, 414 (E.D.N.Y. 2013) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)). In deciding a Rule 12(c) motion, the Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [Plaintiff's] favor." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).

Liang lives with her husband and two children in a house in Great Neck, New York; she purchased the home in approximately July 2016. (Third Am. Compl. ¶ 15).

Home Reno and Home Beyond are New York corporations that offer home renovation services in the Greater New York City area. (*Id.* ¶¶ 9–10; Answer to Third Am. Compl., Dkt. No. 52, ¶¶ 9–10). Defendants Chen, Myers, and Yang are the owners, members, organizers, and managers of Home Beyond and Home Reno. (Third Am. Compl. ¶ 11; Answer to Third Am. Compl. ¶ 11 (admitting only Chen and Myers are owners and members of Home Reno)). These individual Defendants formed Home Reno after several consumer complaints were lodged against Home Beyond. (Third Am. Compl. ¶ 10). The various Doe Defendants are alleged to be subcontractors of Home Beyond or Home Reno who performed the unlicensed home renovation work on Liang's home and extracted payments above the contract price. (*Id.* ¶ 13). The Complaint has not been amended to identify any of these Doe Defendants.

In July 2016, Liang began searching for a home renovation company to renovate her house's flooring, lighting, and upstairs bathroom, and to install a new heating

system.  (*Id.* ¶¶ 15–16).  Liang found Home Reno's website, which states that Home Reno is a "fully licensed and insured . . . full-service home remodeling company[.]"  (*Id.* ¶ 17).  The website also states that Home Reno has "worked hard to develop a sterling reputation in the community for the quality and variety of [its] remodeling products and [its] commitment to customer service" and "it [is] our pleasure to provide our customers with exceptional good price, quality & workmanship from the planning stages of your home remodeling project through its completion and conclusion of our team on the premises."  (*Id.*).

Home Reno, according to the Complaint, is not licensed to engage in home renovation services as required by Nassau County Administrative Code § 21-11.2 and New York City Administrative Code § 20-387.  (Third Am. Compl. ¶ 24).  "Home Reno is an uninsured entity; it is not a full-service company; it does not have a 'sterling reputation;' and the non-employee contractors that it hires are not skilled or qualified to engage in the assigned work."  (*Id.*).

Defendants used a number of online vehicles to promote their home renovations services.  The website for Home Reno is registered to individual Defendant Chen, using the name "Irene Chen."  (*Id.* ¶ 19; Answer to Third. Am. Compl. ¶ 19).  Chen is alleged to have designed and drafted the website.  (Third Am. Compl. ¶ 19.)  Myers and Yang provided input regarding the website.  (*Id.* ¶ 20).  The website was deleted in approximately December 2017.  (*Id.* ¶ 18).  Home Reno is also alleged to have advertised itself as a licensed and insured home renovation company on a Chinese-language website.  (*Id.*; Screenshot of meimin.us, attached as Ex. F to Third Am. Compl., Dkt. No. 46).  This webpage remains online as of January 5, 2018.  (Third Am. Compl. ¶ 18).

Defendants also advertised Home Reno on Facebook, posting photographs of renovations and other content since 2013. (*Id.* at 5 n.1). The Facebook link for Home Reno contains an "llc" designation even though the Home Reno limited liability company had not yet been formed in 2013. (*Id.*). The Home Reno Facebook page also included photographs of Liang's home that were posted without Liang's permission. (*Id.*). Home Reno also advertises itself as a licensed entity in a print newspaper that is distributed to readers via U.S. Mail.[5] (*Id.* ¶ 18; *see* Scan of Newspaper, attached as Ex. G to Third Am. Compl.). Defendants also marketed themselves as "licensed" and "insured" home renovators under the name "Cozy Home Beyond" via the Internet and U.S. Mail. (Third Am. Compl. ¶ 18). The Facebook page, print advertisements, and "Cozy Home Beyond" advertisements remain on the Internet and are still distributed via mail. (*Id.* ¶ 18).

Defendants also posted purportedly fake favorable reviews on Yelp.com to give the impression that Home Beyond had a positive reputation. (*Id.* at 7 n.3). The Complaint alleges that the only two positive reviews on Home Beyond's Yelp page were by two of the individual Defendants: one by "Yan M.," who is Defendant Myers, and a second by T. Y., who is Defendant Yang. (*Id.*).

Liang discussed the renovation on her home with Chen and Myers, (Answer to Third Am. Compl. ¶ 21), who stated that Home Reno was highly experienced and would be able to complete the requested renovations within a few weeks. (Third Am. Compl. ¶ 21). Chen and Myers emphasized that Home Reno is a full-service, fully-licensed, and fully-insured company and that services were covered by a four-month warranty. (*Id.*

---

[5] Defendants' print ad is in *World Journal*, a Chinese-language newspaper published in New York.

¶ 22).  They did not inform Liang that Home Reno contracted the work out to unlicensed non-employee workers.  (*Id.*).  Chen and Myers told Plaintiff that they were not the owners of Home Reno.  (*Id.* ¶ 23).  Chen identified herself as "Irene" and Myers identified herself as "Hatti" or "Heidi."  (*Id.*).  These statements—denying that they are the owners of Home Reno and Home Beyond and using non-legal names—are alleged to be false representations that were part of a scheme to lure customers into signing up for Home Reno's services.  (*Id.* ¶24).

In July 2016, Liang received a contract from Home Reno for home renovation services.  (*Id.* ¶ 25; Contract with Home Reno, dated July 25, 2016, attached as Ex. E to Third Am. Compl., Dkt. No. 46 ("Home Reno Contract"); Answer to Third Am. Compl. ¶ 25).  The agreement was missing information required by New York Business Law § 771 including license numbers, subcontractor information, estimated dates of completion, lien notices, escrow statements, progress-payment statements, and information regarding full cancellation rights.  (Third Am. Compl. ¶ 25).  Many portions of the contract were vague, illegible, and not in plain English.  (*Id.*).  The contract ostensibly was for "[t]otal" charges on the project, a representation that was false because Liang was forced to pay more for the renovation.  (*Id.* ¶ 26).  The total contract price for the renovation was $42,780.  (*See* Home Reno Contract).

Once the contact was signed and the money collected from Liang, Defendants hired unskilled, unlicensed individuals to perform the work to increase their profit margin.  (*Id.* ¶ 27).  In August 2016, Jinhua Chen (who identified himself as Mr. Chen) and other workers arrived at Liang's home to replace the heating system.  (*Id.* ¶ 29; Answer to Third Am. Compl. ¶ 29 (admitting that Home Reno hired Mr. Chen)).  That same month, Pengshi "Paul" Huang arrived at Liang's home with workers to renovate

flooring, lighting, and the upstairs bathroom. (Third Am. Compl. ¶¶ 38–39). Both Jinhua Chen and Pengshi Huang were hired by Defendants, (*id.* ¶¶ 29, 39), but neither was licensed to perform home renovation work and both lacked the skill and knowledge required to complete the project, (*id.* ¶¶ 29, 40). Defendants had failed to conduct a diligent evaluation of either Jinhua Chen or Pengshi Huang's expertise. (*Id.*).

After Jinhua Chen began work, at the behest of Defendants he asked Liang for an additional cash payment, which did not correspond with any agreed-to changes in work. (*Id.* ¶ 30). Pengshi Huang also asked Liang for additional cash payments, again at the behest of Defendants, that exceeded the price of the contract. (Third Am. Compl. ¶ 42). Liang alleges that Defendants set prices in the original contract knowing that additional off-contract payments would be demanded, (*id.* ¶¶ 30, 43), and Jinhua Chen and Pengshi Huang also knew additional payments would be demanded when they began work, (*id.* ¶¶ 31, 43).

Within two weeks of beginning work, Jinhua Chen told Liang that he finished replacing the heating system, and he would return in the fall to turn the system on. (*Id.* ¶ 32). He stated that he could not test or turn on the system during the warm weather. (*Id.*). Jinhua Chen failed to return in the fall. (Third Am. Compl. ¶ 33). After he failed to return, Liang contacted Home Reno numerous times. (*Id.*). Defendant Chen stated that she was not able to locate Jinhua Chen; she could refer Liang to another contractor that would charge a fee, but Home Reno would not directly resolve the issue because Liang had an unpaid balance. (*Id.*). These communications were via text message, as were communications between Meyers and Liang in 2016. (*Id.* ¶ 35). Defendants also sent Liang an email, which claimed Liang had an unpaid balance. (*Id.* ¶ 36). The Complaint alleges that Defendants knew the claims Liang had an unpaid balance were

false and that they sent the communications to take advantage of the lack of heating and extract further off-contract payments. (Third Am. Compl. ¶¶ 35–36).

The heating system was installed in a defective and negligent manner, emitting carbon monoxide and other hazardous fumes into Liang's home for almost one year. (*Id.* at 9 n.4). As a result, Liang and her family became sick as a result on several occasions. (*Id.* ¶ 34). Jinhua Chen also dumped oil and liquid waste from the heating system in Liang's backyard. (*Id.* ¶ 32). As for the flooring, Pengshi Huang's work resulted in uneven, wave-like flooring and lighting fixtures that would turn on and off at random. (*Id.* ¶ 40). The upstairs bathroom would periodically leak through the ceiling and into the kitchen below. (Third Am. Compl. ¶ 41). Defendants never fixed the problems with the heating system, flooring, lighting, or bathroom, and Liang had to hire other contractors to repair the heating system. (*Id.* ¶¶ 37, 41, 44). Unless otherwise noted above, Defendants deny all of the allegations made in Liang's Complaint. (*See* Answer to Third Am. Compl. ¶¶ 1–46).[6]

Liang alleges eight causes of action: (1) racketeering in violation of 18 U.S.C. § 1962(c) (Third Am. Compl. ¶¶ 46–51); (2) civil conspiracy (*id.* ¶¶ 52–56); (3) violation of New York General Business Law § 771 (*id.* ¶¶ 57–62); (4) violation of New York General Business Law § 772 (*id.* ¶¶ 63–66); (5) violation of New York General Business Law § 349 (*id.* ¶¶ 67–72); (6) common law fraud (Third Am. Compl. ¶¶ 73–74); (7) breach of contract (*id.* ¶¶ 75–80); and (8) unjust enrichment (*id.* ¶¶ 81–85). Liang's RICO claim is predicated on: (a) multiple acts of mail and wire fraud in violation of 18

---

[6] Defendants mistakenly included duplicate paragraph numbers in their answer. The Court has relied on the first iterations of ¶¶ 34–37 and disregarded the duplicates. (Answer to Third Am. Compl. at 4–5).

U.S.C. §§ 1341, 1343; (b) extortion; and (c) illegal dumping of hazardous waste in violation of state and federal laws. (*Id.* ¶ 49). Defendants deny these allegations. (Answer to Third Am. Compl. ¶ 46).

Plaintiff seeks relief in the form of treble damages, statutory damages stemming from alleged violations of both federal and state law, actual damages, contract damages, and attorney's fees. (Third Am. Compl. at 18–19).

Discussion

I.  Standards for Motion on Pleadings

In deciding a Rule 12(c) motion on the pleadings, the Court applies the same standard that governs a Rule 12(b)(6) motion to dismiss. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (citing *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994). Therefore, the Court must "accept as true all of the factual allegations set out in plaintiff's complaint." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (quotations omitted). The Court then draws "inferences from those allegations in the light most favorable to plaintiff, and construe[s] the complaint liberally." *Id.* (quotations omitted); *see, e.g.*, *Latour v. Columbia Univ.*, 12 F. Supp. 3d 658, 661, 664 (S.D.N.Y. 2014) (granting motion on the pleadings and applying the 12(b)(6) standard); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 448, 452 (E.D.N.Y. 2007) (same). The Court may also consider any documents attached to the complaint or the answer,[7] *see*

---

[7] Defendants submitted a number of other materials that the Court does not consider in deciding this motion, because they were not attached to either the Third Amended Complaint or Answer. (*E.g.*, Aff. of Beina Chen, attached to Notice for J. on Pleadings, Dkt. No. 23; Aff. of Beina Chen, attached as Ex. 1 to Response in Opposition, Dkt. No. 39).

*Roberts*, 582 F.3d at 419, or any document incorporated by reference, *Gregory*, 243 F.3d at 691.

Once the facts are construed in the light most favorable to the plaintiff, to avoid dismissal there must be sufficient facts that allege a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim "contains factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see* Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The determination of whether a plaintiff has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court applies this same analysis to a defendant's motion for judgment on the pleadings. *See, e.g.*, *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 413 (E.D.N.Y. 2009).

II.     Liability

    A.  RICO Elements

To state a RICO claim, a plaintiff must allege: "(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was

caused by the violation of Section 1962." *DeFalco v. Bernas*, 244 F.3d 286, 305 (2d Cir. 2001) (quotations omitted).

As to the first element—violation of the RICO statute—Liang's first claim alleges that Defendants engaged in racketeering in violation of § 1962(c). Section 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). To demonstrate a violation of § 1962(c), a plaintiff must show "'(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains and interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.'" *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)). These requirements must be established as to each defendant. *DeFalco*, 244 F.3d at 306; *Cappone v. Morrissey*, No. 16-CV-7170, 2018 WL 4055280, at *6 (E.D.N.Y. July 27, 2018), *report and recommendation adopted*, 2018 WL 4054871 (Aug. 24, 2018).

As explained below, Liang's first claim fails to allege the pattern of racketeering activity necessary to state a RICO claim, and is therefore dismissed with prejudice.

B. <u>Pattern of Racketeering Activity</u>

Section 1961(1) sets forth an exclusive list of those acts that may constitute racketeering activity; those include: (1) mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) and (2) extortion under federal law (18 U.S.C. § 1951) ("Hobbs Act"

extortion) or "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1).

The racketeering acts alleged by Liang are mail and/or wire fraud, extortion, and illegal dumping of hazardous waste. For acts to form a "pattern" of racketeering activity, there must be at least two acts, they must be related and "amount to, or pose a threat of, continuing criminal activity." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

      1.  Mail and Wire Fraud

Liang's mail and wire fraud claim alleges that Defendants "systematically and continuously used . . . the internet . . . to disseminate false statements regarding the licensure, insurance, customer satisfaction, business entity formation, and the character of [their] . . . home renovation services." (Third Am. Compl. ¶ 49). Liang also alleges that Defendants mailed false advertising to newspapers for publication. (*Id.*). These allegations do not amount to mail or wire fraud.

A plaintiff using the mail and wire fraud statutes as a RICO predicate must allege three elements: "'(1) a scheme to defraud [including scienter], (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme.'" *Bigsby v. Barclays Capital Real Estate, Inc.*, 298 F. Supp. 3d 708, 717 (S.D.N.Y. 2018) (quoting *United States v. Greenberg*, 835 F.3d 295, 305 (2d Cir. 2016) (citation omitted)). "Courts have repeatedly warned against attempts by plaintiffs to mold their claims to the RICO form even though their injuries do not fall within those intended to be addressed by the Act. The alleged predicate acts of mail and wire fraud merit particular scrutiny lest the courts allow the RICO statute to federalize garden-variety state common law claims." *Bigsby v. Barclays Capital Real Estate, Inc.*, 170 F. Supp.

3d 568, 575 (S.D.N.Y. 2016) (internal quotations and citations omitted). This scrutiny is imposed by requiring that allegations of racketeering activity sounding in fraud must satisfy the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *Moore v. PaineWebber, Inc.,* 189 F.3d 165, 173 (2d Cir. 1999). Among other things, Rule 9(b) requires that a plaintiff allege that a defendant acted with scienter—that the "defendant[] possessed a fraudulent intent." *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987); *see* Fed. R. Civ. P. 9(b).

To plead scienter, a plaintiff can proceed in one of two ways: first, by identifying circumstances "indicating conscious or reckless behavior" by a defendant; or second, by showing a motive and opportunity to commit fraud. *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 813 (2d Cir. 1996). In either case a plaintiff must "provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference of fraudulent intent." *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995) (quotations omitted).

Liang's allegations fail to allege scienter under either approach.

*First,* the Complaint is devoid of facts suggesting conscious or reckless behavior by Defendants. The Complaint is laden with allegations that Defendants used "false representations" (about their past projects and licensure, among other things) to obtain home renovation projects. (*E.g.*, Third Am. Compl. ¶¶ 3, 18). But none of those statements state that Defendants acted with fraudulent intent. For instance, the allegations about the Chinese-language website, Facebook pages, Yelp reviews, and newspaper advertisements are all devoid of allegations that Defendants made such statements knowing that they were false.

Where the Complaint does allege that Defendants made such representations with scienter, Liang has offered only the most perfunctory and conclusory statements. For example, Liang alleges "[u]pon information and belief, Defendant Beina Chen knew or had reason to know that Home Reno was not licensed to engage in home renovation services." (*Id.* ¶ 19). That statement, standing alone, is just speculation. There are no additional facts from which to infer why Chen knew that Home Reno was in violation of licensing laws or that she was even aware that licensing laws applied to Home Reno. This absence of necessary facts is emblematic of the rest of the Complaint: each statement that alleges that Defendants had knowledge of the false or fraudulent representation is devoid of any detail or supporting factual information. (*E.g.*, *id.* ¶ 26 ("Upon information and belief, the stated charges were intentionally false and designed to deceive the Plaintiff into believing that she was obtaining a certain price[.]")). "[T]he relevant inquiry is not whether the plaintiff has stated that scienter exists, but whether the plaintiff has 'provide[d] some factual basis for conclusory allegations of intent,' which must 'give rise to a "strong inference" that the defendants possessed the requisite fraudulent intent.'" *Li Jun An v. Hui Zhang*, No.13-CV-5064, 2013 WL 6503513, at *6 n.3 (S.D.N.Y. Dec. 6, 2013) (quoting *Turkish v. Kasenetz,* 27 F.3d 23, 28 (2d Cir. 1994)). Without any supporting factual information, these conclusory statements are insufficient to allege that Defendants' misbehavior was conscious or reckless. *See, e.g.*, *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, No.03-CV-8606, 2004 WL 2187069, at *8 (S.D.N.Y. Sept. 29, 2004) (dismissing RICO claim where plaintiff alleged defendants disseminated false advertising about hotel operations, because complaint lacked facts that led to an inference that defendants knew their statements to be false); *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, No.02-CV-8993, 2004 WL 238035, at *1

(S.D.N.Y. Feb. 9, 2004) (dismissing RICO complaint where "the second amended complaint does not clearly set forth the factual basis for plaintiffs' allegations on information and belief and[/]or what precisely they claim [Defendant] knew at relevant times, let alone the facts upon which such claims of knowledge are based.").

*Second*, Liang has not alleged the requisite opportunity and motive to commit fraud. Liang alleges that Defendants made false representations to her and others for the purpose of inducing her to engage Home Reno and sign its contract. (Third Am. Compl. ¶¶ 24–25). Alleging that a defendant induced a party to do business with plaintiff—which is all Liang has alleged—does not allege that the defendant acted with scienter. "[R]outine benefits derived in the ordinary course of business do not constitute the type of 'concrete benefit' necessary to allege fraudulent intent under Rule 9(b)." *MLSMK Invs. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 143 (S.D.N.Y. 2010) (collecting cases), *aff'd in part*, 431 F. App'x 17 (2d Cir. 2011), and *aff'd*, 651 F.3d 268 (2d Cir. 2011). "[T]o allege motive under Rule 9(b), a plaintiff must show a benefit to the defendant going beyond the receipt of normal compensation for professional services rendered." *Id.* (quotations omitted).

There is a more fundamental problem—outside of scienter—that dooms the mail and wire fraud allegations. Liang's complaint is at its heart a commonplace contractor-homeowner dispute that arises out of contract non-performance. She is essentially alleging that Defendants agreed to perform certain home renovation services, at an agreed upon price, and made either implied warranties or representations about the quality and performance of the work and who would perform that work. Defendants allegedly failed to live up to their promises and the harm Plaintiff suffered was defective work, and consequential harm from defective work. That is a breach of contract claim,

not fraud. *See, e.g.*, *Renaissance Equity Holdings, LLC v. Al-An Elevator Maint. Corp.*, 993 N.Y.S.2d 563, 566 (2d Dep't 2014) (dismissing fraud claim, finding that allegations amounted to breach of contract, where plaintiff alleged "defendants made knowingly false statements that the subject elevators would be promptly repaired and properly maintained, and that any governmental violations that were issued with regard to them would be resolved and closed."); *Sass v. TMT Restoration Consultants Ltd.*, 953 N.Y.S.2d 574, 575 (1st Dep't 2012) ("With regard to the fraud claim, . . . the only harm alleged, defective workmanship, relates to plaintiff's claim for breach of contract."); *Rubinberg v. Correia Designs, Ltd.*, 692 N.Y.S.2d 172, 173 (2d Dep't 1999) (affirming dismissal of fraud claim where defendant allegedly overcharged plaintiff "while performing interior design services during the construction of their home;" plaintiff was only entitled to breach of contract remedy); *Calamel v. Ridge View Realty Corp.*, 496 N.Y.S.2d 154, 155 (4th Dep't 1985) ("A latent construction deficiency was discovered in 1982 and . . . [this] action alleging negligent construction and fraud was commenced on March 14, 1984. . . . [P]laintiffs' claim is essentially one for breach of contract.").

A breach of contract "does not amount to mail fraud. Failure to comply with a contractual obligation is only fraudulent when the promisor *never intended* to honor the contract." *U.S. ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, 822 F.3d 650, 660 (2d Cir. 2016) (quotations omitted). "An intent to harm a party to a transaction cannot be found where the evidence merely indicates that the services contracted for were dishonestly completed." *United States v. Novak*, 443 F.3d 150, 159 (2d Cir. 2006). The necessary fraudulent intent exists if there is some allegation that the counterparty had no intent ever to perform under the contract. *O'Donnell*, 822 F.3d at 659–60; *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) ("It does not constitute

fraud unless, when the promise was made, the defendant secretly intended not to perform or knew that he could not perform.").  There is no allegation that when Defendants entered into the renovation contract with Liang that they had no intention to perform the contract.  Thus, the breach of contract—no matter how egregious the failure to perform—alleged by Defendants does not amount to a fraud claim, and therefore cannot be the predicate act for a RICO violation.[8]  *See Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 132 (S.D.N.Y. 1999) (dismissing RICO claims where "[Plaintiff] points to no circumstances that show [Defendant] consciously set out to defraud him.  In short, the complaint contains no allegations that distinguish this case from a typical contract dispute."); *Soper v. Simmons Int'l, Ltd.*, 632 F. Supp. 244, 249 (S.D.N.Y. 1986) ("None of the facts of which plaintiffs are aware reasonably support their claim that defendants acted with scienter . . . .  Although one who makes a contractual promise with the undisclosed intention to breach it can be held liable for fraud, proof of such intention must be based on more than a mere showing of nonperformance.") (citations and quotations omitted).

---

[8] To the extent that Liang is alleging that she was fraudulently induced to enter into her contract with Defendants by the false advertising and other promises, such a claim would merge with her breach of contract claim.  "To maintain a separate claim for fraudulent inducement that does not merge with a breach of contract claim, a plaintiff must (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages."  *Rojas v. Don King Prods., Inc.*, No.11-CV-8468, 2012 WL 760336, at *4 (S.D.N.Y. Mar. 6, 2012) (quotations omitted).  Liang has not made such allegations.  If the fraudulent inducement claim merged with any breach of contract claim, then those allegations would not establish the predicate mail or wire fraud either.

2. Extortion

Under 18 U.S.C. § 1961(1), Hobbs Act extortion (18 U.S.C. § 1951) may serve as a predicate act for a RICO claim. *United States v. Kirsch*, 903 F.3d 213, 221 (2d Cir. 2018). "Extortion, as defined in the Hobbs Act, consists of the use of wrongful means to achieve a wrongful objective," *United States v. Clemente*, 640 F.2d 1069, 1076 (2d Cir. 1981), namely "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear[,]" 18 U.S.C. § 1951(b)(2).[9]

Liang alleges that Defendants engaged in extortion by "attempting to extract unlawful payments from the Plaintiff under the threat and fear of continued physical harm associated with living in a home without heat in November." (Third Am. Compl. ¶ 49). This does not amount to Hobbs Act extortion.

For one thing, to the extent that the sentence can be read to suggest that the Defendants threatened Liang, the allegation is simply too conclusory to withstand a motion on the pleadings. *See, e.g.*, *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 324–25 (E.D.N.Y. 2004) ("[Plaintiff's] conclusory allegations concerning the conduct of [Defendants] . . . do not properly allege the predicate act of extortion."). The paragraphs in the Complaint that actually describe the conversations between Defendants and Liang do not say that Defendants threatened Liang. (*E.g.*, Third Am. Compl. ¶¶ 30, 33). That

---

[9] Liang fails to specify whether the alleged extortion claim is being brought under federal or state law. Defendants only address whether extortion under federal law is adequately pled. (*See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, attached to Motion for Judgment on Pleadings, Dkt. No. 53, at 17–18). Since the parties have only briefed the issue under federal law, the Court will only address Hobbs Act extortion as a potential predicate RICO act.

a negative consequence follows from a demand for money or property does not mean that the consequence was used as a threat.

As to whether the Defendants used fear, one paragraph alleges on "information and belief" that Defendants acted with the knowledge that Liang's "family would suffer or fear suffering physical harm from the cold temperatures if they continued to reside in a home without heat." (*Id.* ¶ 36). A fear of loss of heating has never been found, as far as this Court can determine, to be the kind of fear covered by the Hobbs Act. Extortion by wrongful use of fear of economic loss is Hobbs Act extortion, *United States v. Rastelli*, 551 F.2d 902, 904 (2d Cir. 1977), but Liang does not allege that she feared economic loss from Defendants. She feared heat loss. Extortion by wrongful use of fear of physical violence is also Hobbs Act extortion, *see* 18 U.S.C. § 1951(b)(2), but Liang does not allege that she feared physical violence, merely that she feared a loss of heat during the winter months. "While surely it must be difficult to have such strife . . . , the Hobbs Act was enacted to address something significantly more violent and sinister." *Kimm v. Lee*, No.04-CV-5724, 2005 WL 89386, at *6 (S.D.N.Y. Jan. 13, 2005), *aff'd sub nom. Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006). Fear of loss of heating is not the kind of fear covered by the Hobbs Act. *Cf. Wood v. Gen. Motors Corp.*, No. 08-CV-5224, 2015 WL 1396437, at *6 (E.D.N.Y. Mar. 25, 2015) ("[I]t is doubtful that any fear arising out of potential car failure is the kind of fear contemplated by federal or state extortion statutes. These laws contemplate fear of force, violence, economic loss, or other material harm.").

Even if Paragraph 36 fell within the definition of extortion, it is the sole paragraph relating to a single incident where the Defendants allegedly exploited Liang's fear. At best it would amount to a single act of extortion and not enough to establish a

pattern of such activity, as RICO requires. "[A] plaintiff must offer proof that the defendants engaged in at least two of the predicate acts specified in § 1961(1) with[in] a ten year period." *Persaud v. Bode*, No. 04-CV-4475, 2006 WL 1419397, at *4 (E.D.N.Y. Feb. 8, 2006) (citing 18 U.S.C. § 1961(5)).

### 3. Hazardous Waste

Liang alleges the dumping of hazardous waste in violation of federal and state law as a third predicate act. Liang has not identified a federal or state statute that such dumping violates. In any event, Section 1961(1) is an exhaustive list of predicate RICO acts and the dumping of hazardous waste is not listed therein. This alleged dumping cannot, therefore, be the basis of a RICO claim.

*     *     *

In the absence of any predicate acts, Liang's RICO claim fails.[10] *Asch v. Philips, Appel & Walden, Inc.*, 867 F.2d 776, 777–78 (2d Cir. 1989) ("[T]he failure of Asch's substantive claims means that there are no predicate acts to support a RICO claim."); *see, e.g.*, *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 138 (E.D.N.Y. 2010) (dismissing plaintiff's RICO claim because, *inter alia*, he failed to pled the existence of two or more predicate acts constituting a pattern of racketeering activity). Defendants' motion on the pleadings as to the RICO claim is, therefore, granted.

---

[10] There may be other manifold deficiencies in the RICO claim, including the failure to establish the existence of a RICO enterprise or the necessary interstate or foreign commerce requirement, among others. The Court finds it unnecessary to address such possible deficiencies in light of the complete absence of any predicate racketeering activity.

III. <u>Supplemental Jurisdiction</u>

The only basis for subject matter jurisdiction is Liang's RICO claim.  In light of the dismissal of that claim, the Court must decide whether to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").  When all federal claims are eliminated before trial, "'the balance of factors to be considered'"— including judicial economy, convenience, fairness, and comity—typically points towards declining to exercise supplemental jurisdiction over any remaining state-law claims. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

In this case, discovery is not complete, and the parties have not briefed summary judgment.  The Court is dismissing the only claim over which it has original jurisdiction with prejudice.  Courts have generally found, in similar situations, where the RICO claim is dismissed, that declining to exercise supplemental jurisdiction over remaining state or common law claims is the proper course.  *See, e.g.*, *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) ("[T]he district court properly declined to exercise supplemental jurisdiction over the state law claims after dismissing the RICO action."); *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 410 (E.D.N.Y. 2017); *Brookhaven Town Conservative Comm. v. Walsh*, 258 F. Supp. 3d 277, 280 (E.D.N.Y. 2017); *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 407–08 (S.D.N.Y. 2000). The Court declines to exercise supplemental jurisdiction and dismisses the remaining state law claims without prejudice.

<u>Conclusion</u>

For the reasons stated above, the motion on the pleadings on the RICO claim is granted, and the RICO claim is dismissed with prejudice.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims, and those are therefore dismissed without prejudice.  The Clerk of Court is directed to close this case.

SO ORDERED.

<u>*/s/ Sanket J. Bulsara* October XX, 2018 </u>
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York